**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

EASTERN RIDGE LIME, L.P.,
Petitioner,

v.

FEDERAL MINE SAFETY & HEALTH

REVIEW COMMISSION; SECRETARY OF
LABOR, Mine Safety and Health
Administration,
Respondents.

No. 97-1579

On Petition for Review of an Order of the
Federal Mine Safety and Health Review Commission.

Argued: January 28, 1998

Decided: April 13, 1998

Before MURNAGHAN, NIEMEYER, and MOTZ, Circuit Judges.

_____

Petition for review granted and case remanded by unpublished opin-
ion. Judge Niemeyer wrote the opinion, in which Judge Motz joined.
Judge Murnaghan wrote a dissenting opinion.

_____

**COUNSEL**

**ARGUED:** Thomas Blumeyer Weaver, ARMSTRONG, TEAS-
DALE, SCHLAFLY & DAVIS, St. Louis, Missouri, for Petitioner.
Yoora Kim, Office of the Solicitor, UNITED STATES DEPART-
MENT OF LABOR, Washington, D.C., for Respondents. **ON
BRIEF:** John F. Cowling, ARMSTRONG, TEASDALE, SCHLA-

FLY & DAVIS, St. Louis, Missouri, for Petitioner. J. Davitt McAteer, Acting Solicitor of Labor, Edward P. Clair, Associate Solicitor, W. Christian Schumann, Office of the Solicitor, UNITED STATES DEPARTMENT OF LABOR, Washington, D.C., for Respondents.

---

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

---

## OPINION

NIEMEYER, Circuit Judge:

Following a mine cave-in in which one miner was killed and another injured, the Federal Mine Safety and Health Review Commission cited Eastern Ridge Lime, L.P., the mine owner and operator, for safety violations, and assessed it $85,000 in penalties. For the reasons that follow, we grant Eastern Ridge's petition for review and remand this case for further consideration of the penalties.

I

On July 25, 1994, the roof of a limestone mine in Ripplemead, Virginia, owned and operated by Eastern Ridge, caved in, killing Barry Snider, a mine supervisor, and injuring Jeffrey Morgan, a driller. The "roof fall" occurred when the two men were attempting to "scale" loose a large rock with a Jumbo drill. "Scaling" is a process of striking and prying at a blasted stone face with metal bars to remove loose pieces and to determine whether the stone is loose or solid.

The mining process for limestone at the Ripplemead mine involved a random room and pillar method. Under this method, the miners create rooms in the mine by blasting the stone and removing the loose rock created by the blast. Pillars of stone are left standing to provide support for the roof of the mine. Scaling is one of the procedures employed in mining with this process.

Following the July 25 roof fall, the Mine Safety and Health Administration ("MSHA") investigated the incident and issued a citation to Eastern Ridge, charging it with violations of three mandatory safety standards promulgated in 30 C.F.R. § 57.3360 (requiring ground support when it is "necessary"), 30 C.F.R. § 57.3201 (requiring protection for miners performing scaling), and 30 C.F.R.§ 57.14205 (limiting the hazardous use of mining equipment). Eastern Ridge contested the charges, and, in October 1996, a hearing was held before an administrative law judge ("ALJ").

At the hearing, fact witnesses testified to the conditions of the roof prior to the roof fall and to the circumstances of the mining operations at the time. In addition, both the MSHA and Eastern Ridge presented the testimony of expert witnesses. The MSHA's expert expressed his belief that ground support was necessary at the location of the roof fall and that the accident resulted from a cantilever joint failure. Eastern Ridge's expert, in contrast, gave his opinion that ground support was not necessary and that the cause of the accident was not a failure of roof support but rather the existence of a cavity above the roof, from which a large number of boulders fell.

The ALJ found that Eastern Ridge had violated 30 C.F.R. §§ 57.3360 and 57.3201, but not 30 C.F.R.§ 57.14205. In reaching this conclusion, the ALJ did not make a finding as to the cause of the roof fall, explaining, "the issue before me is not the cause of the accident, but rather whether ground conditions indicated the necessity for ground support." Rather, the ALJ only found that,"prior to the fatal accident, ground conditions indicated that ground support was necessary" and that "scaling was performed [unprotected] from a location which exposed" Snider and Morgan to injury from falling material. On this basis, the ALJ found violations of § 57.3360 (requiring ground support when it is "necessary") and§ 57.3201 (requiring protection for miners performing scaling).

In assessing the appropriate penalties, the ALJ concluded that both violations were "significant and substantial" as well as "unwarrantable." With regard to the § 57.3360 violation, the ALJ stated, "[t]aking into account the combination of ground conditions . . . and considering the fact that a roof fall did occur in the area causing a fatality and seriously injuring another miner, I conclude that the third

3

and fourth elements [necessary to show a `significant and substantial' violation] have been established." In determining the penalty, he explained, "I find that the gravity of the violation was of a very high level as the violation contributed to a fatal roof fall." Accordingly, he assessed a $50,000 penalty.

Similarly, with regard to the § 57.3201 violation, the ALJ stated, "[c]onsidering the fact that the Respondent's negligence reached the level of aggravated conduct, and the fact that the violation herein contributed to a fatality, I conclude that the gravity of the violation was relatively high." For this violation, the ALJ assessed a $35,000 penalty.

The Federal Mine Safety and Health Review Commission declined discretionary review, and Eastern Ridge filed this petition for review.

II

Eastern Ridge argues that substantial evidence does not support the Commission's findings on both violations. It avers that the record contains no evidence about how artificial supports could have controlled the hazard of a rock fall, and therefore no evidence from which an ALJ could conclude that such support was necessary. It argues in part that the ALJ attempted to justify his ruling on the occurrence of a rock fall without finding its cause. Eastern Ridge similarly contends that when the ALJ found that the miners performing scaling were improperly exposed to injury from falling material, he based that finding on the fact that a rock fall occurred, but never actually found whether that rock fall was caused by a violation. It therefore argues that the ALJ's holdings as to both violations are factually unsupported.

We may review the Commission's findings and decisions (1) where a "finding or conclusion of material fact is not supported by substantial evidence;" (2) where a "necessary legal conclusion is erroneous;" (3) where the decision is contrary to law or Commission rulings; (4) where a "substantial question of law, policy or discretion is involved;" or (5) where a "prejudicial error of procedure was committed." 30 U.S.C. § 823(d)(2)(A)(ii) (standards for Commission's review of ALJ determinations); see National Cement Co. v.

4

FMSHRC, 27 F.3d 526, 530 (11th Cir. 1994) (recognizing court's standard for reviewing Commission's decision is the same as that used by Commission to review ALJ determinations). On the other hand, we regard as conclusive the Commission's findings of fact "if supported by substantial evidence on the record considered as a whole." 30 U.S.C. § 816(a)(1).

The ALJ based his first finding of violation on 30 C.F.R. § 57.3360, which states that "[g]round support shall be used where ground conditions, or mining experience in similar ground conditions in the mine, indicate that it is necessary." The ALJ found that "prior to the fatal accident, ground conditions indicated that ground support was necessary." Substantial evidence in the record supports this conclusion. Various witnesses testified to the fact that the relevant area of the mine exhibited mud seams, cavities, and popping noises. They also testified to the fact that joints appeared across the face of the rock being mined and that the rock in the roof sounded "drummy." In addition, the MSHA's expert testified to his belief that, given the mine conditions in the area, artificial ground support was necessary. The ALJ's findings are thus supported by substantial evidence, and the MSHA need not also show that steel supports would have been effective in preventing the roof fall. The ALJ did not rely on the actual roof fall to bolster its finding of a § 57.3360 violation, and thus it did not need evidence of the effectiveness of supports in preventing any such fall.

The ALJ based his second finding of violation on 30 C.F.R. § 57.3201, which states that "[s]caling shall be performed from a location which will not expose persons to injury from falling material, or other protection from falling material shall be provided." The ALJ found that Morgan was "exposed to the hazard of a roof fall" and that he could not find from the record that the cab in which Morgan was located was adequate to protect him. The ALJ also found that Snider "was situated unprotected on the ground." From these findings, the ALJ concluded that the "scaling was performed from a location which exposed them to [injury from falling material]" and therefore that Eastern Ridge had violated § 57.3201. Again, substantial evidence in the record supports the ALJ's conclusion. Testimony at the hearing indicated that Snider was located unprotected in an area that presented

5

a hazard of a rock fall, and that Morgan's only protection from the hazard of a rock fall was the drill rig cab.

Thus, regardless of the cause of the actual rock fall, the ALJ's findings find support in the record.

III

Beyond finding these two violations, however, the ALJ held that Eastern Ridge's violations were sufficiently aggravated to require substantial civil penalties. He found that the violations were "significant and substantial" and "of a very high level," based on the roof fall and the fatality resulting from the roof fall. In reaching this conclusion, however, the ALJ incorrectly relied on factual findings which he did not make. The ALJ explicitly declined to find that the cause of the accident was Eastern Ridge's failure to install additional ground support, stating that "the issue before me is not the cause of the accident." Thus, any ALJ findings which rely on a presumption that the accident was caused by Eastern Ridge's violations are logically flawed.

In order to show that an operator's violation is"significant and substantial," the MSHA must prove "(1) the underlying violation of a mandatory safety standard; (2) a discrete safety hazard -- that is, a measure of danger to safety -- contributed to by the violation; (3) a reasonable likelihood that the hazard contributed to will result in an injury; and (4) a reasonable likelihood that the injury in question will be of a reasonably serious nature." Mathies Coal Co., 6 FMSHRC 1, 3-4 (1984).

In the case of the § 57.3360 violation, the ALJ appropriately found the first two Mathies Coal prongs satisfied, holding that "the essence of the violation, i.e., failure to provide ground support, contributed to the hazard of a roof fall." In making its findings on the third and fourth prongs, however, the ALJ considered the "combination of ground conditions . . . and . . . the fact that a roof fall did occur in the area causing a fatality and seriously injuring another miner." (Emphasis added). The ALJ's usage of the roof fall as a relevant event is unsupported. Because the ALJ never found whether the failure to provide roof support was the cause of the accident, its holding

6

that the accident indicated that Eastern Ridge "significantly and substantially" violated § 57.3360 is a non sequitur. In order to rely on such a finding, the ALJ would need to have found that the failure to provide ground support caused the accident; otherwise, the actual fact of a roof fall indicates nothing relevant about Eastern Ridge's actions.

This logical error becomes most consequential in the ALJ's imposition of penalties. In assessing a penalty for the § 57.3360 violation, the ALJ noted that "the gravity of the violation was of a very high level as the violation contributed to a fatal roof fall." (Emphasis added). Similarly, in assessing a penalty under § 57.3201, the ALJ considered "the fact that the violation herein contributed to a fatality." (Emphasis added). Taking into account these factors, the ALJ imposed fines of $50,000 and $35,000, respectively. By relying on the fact that Eastern Ridge's actions contributed to the roof fall and the fatality in making its penalty assessments, the ALJ inappropriately took account of factors extrinsic to its own findings.

For these reasons, we grant Eastern Ridge's petition for review and remand this case for further factfinding and analysis of the penalties to be assessed. Our ruling should not, however, be understood to imply that causation must be found in every case. The Commission may impose penalties without any reference to whether a roof fall or fatality occurred. But where an ALJ relies on the supposition that a mining company's failure to act was a contributing factor in a fatal roof fall, he must first find that the failure to act was actually a contributing factor.

PETITION FOR REVIEW GRANTED
AND CASE REMANDED

MURNAGHAN, Circuit Judge, dissenting:

I would affirm. Despite the majority's claim, the ALJ did not "explicitly decline[ ] to find that the cause of the accident was Eastern Ridge's failure to install additional ground support." See majority op. at 6. Instead, he merely noted that when determining whether or not there had been a violation of § 57.3360, "the issue before [him] [wa]s not the cause of the accident, but rather whether ground conditions indicated the necessity for ground support." J.A. at 11 (decision of

7

Judge Weisberger). That statement was correct, and we have appropriately affirmed his finding of violation.

The fact that the violations contributed to the accident and injuries was a factor in the ALJ's determination of the appropriate penalties, however,* and he specifically found causation before imposing these penalties. See id. at 13 ("I find that the gravity of the violation was of a very high level as the violation contributed to a fatal roof fall."); id. at 15 ("Considering the fact that the Respondent's negligence reached the level of aggravated conduct, and the fact that the violation herein contributed to a fatality, I conclude that the gravity of the violation was relatively high."). The majority apparently believes that if the ALJ "did not rely on" a finding of causation in deciding that there was a violation, see majority op. at 5, he could not later in the opinion have found causation when imposing the penalties.

There was substantial evidence in the record to support the ALJ's explicit finding that the violations contributed to the injuries from the roof fall, and therefore the decision of the ALJ should be affirmed in its entirety. I respectfully dissent.

_____

*The ALJ could have chosen to impose the same penalties without a finding of causation. On remand, he may either more clearly find causation, or more clearly base his imposition of the penalties solely on the mine's gross negligence in repeatedly ignoring the warnings of its workers about the unsafe ground conditions. Because either finding would be supported by substantial evidence, I believe that our remand today is pointless.

8